O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FILLIP ALAN DESSER, MARLO
ILYNE DESSER,

                    Plaintiffs,

        v.

U.S. BANK, N.A.; US BANK
HOME MORTGAGE, a division of
U.S. BANK, N.A. NORTH
AMERICAN SAVINGS BANK,
F.S.B., a federal savings
bank, NATIONAL DEFAULT
SERVICING CORPORATION, a
corporation,

                    Defendants.
_____

) Case No. CV 13-09190 DDP (CWx)
)
) **ORDER GRANTING IN PART AND**
) **DENYING IN PART MOTION TO DISMISS**
) **FIRST AMENDED COMPLAINT**
)
) [Dkt. No. 24]
)
)
)
)
)
)
)
)
)
)
)
)

        Before the court is a Motion to Dismiss Fillip Alan Desser and

Marlo Ilyne Desser ("Plaintiffs")'s First Amended Complaint ("FAC")

filed by Defendant U.S. Bank, N.A. on behalf of itself and

Defendant U.S. Bank Home Mortgage. (Dkt. No. 24.) The matter is

fully briefed and suitable for decision without oral argument.

Having considered the parties' submissions, the court adopts the

following order.

**I.   Background**

The following alleged facts are drawn from Plaintiffs' FAC:

In April 2007, Plaintiffs purchased a home with a first trust deed loan from North American Savings Bank, F.S.B. (See FAC ¶ 8.) The loan was serviced by a division of Defendant U.S. Bank, N.A., U.S. Bank Home Mortgage (collectively, "Defendant").[1] (See id. ¶ 9.)

In July 2009, Defendant mailed Plaintiffs a loan modification offer. (See id. at ¶ 10.) To accept the offer, Plaintiffs were required to agree to the Home Affordable Mortgage Protection ("HAMP") Trial Period Plan agreement ("TPP"). (See id.) Under the TPP, Plaintiffs were obligated to make trial modification payments of $2015.84 in August 2009, September 2009, and October 2009. (Id. ¶ 11.) The TPP stated that if Plaintiffs complied with the TPP's terms, Plaintiffs' mortgage would be modified pursuant to HAMP's rules. (Id. at ¶ 10.)

Plaintiffs accepted the offer, signed the TPP agreement, and timely paid each trial payment. (Id. ¶ 11.) After Plaintiffs paid the final trial payment, Defendant requested additional paperwork from Plaintiffs. (Id. ¶ 12.) On October 12, 2009, Plaintiffs complied with the documentation request. (Id. ¶ 13.)

On October 29, 2009, Plaintiffs called Defendant because they had not received any information about whether they qualified for a final HAMP loan modification. (Id. ¶ 14.) Plaintiffs were told by a representative in Defendant's HAMP Department to make a fourth

---

[1] U.S. Bank N.A. asserts that U.S. Bank Home Mortgage, a division of U.S. Bank N.A., has been erroneously sued in this action as a separate entity. (Motion at 1.)

trial modification payment in November 2009. (Id.) Plaintiffs made
the requested payment. (Id. ¶ 15.)

On approximately November 19, 2009, Plaintiffs received a
Final Modification Agreement ("Agreement"). (Id. ¶ 16 and Ex. C.)
The Agreement required Plaintiffs to pay a monthly mortgage payment
of $2084.49, an amount slightly higher than the trial payment
amount of $2015.84. (Id.) The Agreement contained a payment
schedule requiring that the first mortgage payment be made by
October 1, 2009. (Id.) However, because Plaintiffs received the
Agreement after the initial payment was due under the Agreement's
payment schedule, Plaintiffs were not aware of and did not pay the
October 2009 and November 2009 payments required by the schedule.
(See id.) On December 2, 2009, Plaintiffs notarized and mailed the
Agreement to Defendant. (Id. ¶ 17.)

Plaintiffs subsequently attempted to obtain confirmation from
Defendant that their HAMP modification was in place and requested a
copy of the Agreement signed by Defendant. (Id. ¶ 18.) However,
Defendant failed to provide such confirmation or a signed copy of
the Agreement. (Id.)

Instead, on March 18, 2010, Plaintiffs received a letter from
Defendant denying their pending loan modification for failure to
provide requested documentation. (Id. ¶ 19.) Exasperated,
Plaintiffs contacted Defendant again and were told by a bank
representative that they should not worry and that their
application was still under review. (Id.) The representative
explained that the problem in their file was a result of the fourth
trial payment, which Defendant's new software could not process,
resulting in their fourth payment being misapplied. (Id.) The

3

1 | representative further advised Plaintiffs that new loan
2 | modification documents would be generated, which Plaintiffs would
3 | need to sign, and that Plaintiffs should not make any payments
4 | until this occurred because the exact amount of the re-worked
5 | modification was not yet known and if a payment was not sent in the
6 | exact amount required it would also be misapplied and cause further
7 | problems with their application. (Id. ¶ 21)

8 |      On March 24, 2010, a representative of Defendant informed
9 | Plaintiffs that Defendant had not received the original, notarized,
10 | final modification documents Plaintiffs had sent on December 2,
11 | 2009. (Id. ¶ 22.) The representative confirmed that Plaintiffs
12 | should stop making payments due to system adjustments that
13 | Defendant was undertaking. (Id.) Per the representative's
14 | instructions, Plaintiffs re-sent the documents, with copies of the
15 | notary journal. (Id. ¶ 23.)

16 |      Plaintiffs' mortgage statements continued, up through December
17 | 2010, to state that they were $59,920.35 in arrears on their
18 | mortgage and that the interest rate on their loan was 6.000%,
19 | despite their having finalized a modification at 2.000%. (Id. ¶ 24
20 | and Ex. F.)

21 |      In January 2011, Plaintiffs' mortgage statement for the first
22 | time reflected the terms of the finalized HAMP modification. (Id. ¶
23 | 25.) However, although the January 2011 statement indicated the
24 | correct interest rate and monthly payment, the statement indicated
25 | that Plaintiffs had a past due amount of $28,413.15. (See id. and
26 | FAC Ex. G.) Upon receipt of this statement, Plaintiffs contacted
27 | Defendant on numerous times, but "U.S. Bank did not respond
28 | appropriately" and Plaintiffs' file was referred for foreclosure.

1   (Id. ¶ 25.)

2       On June 3, 2011, U.S. Bank Home Mortgage and National Default

3   Servicing Corporation recorded a Notice of Default alleging

4   arrearages of $49,883.46 as of May 28, 2011. (Id. ¶ 27 and Ex. H.)

5       On September 6, 2011, Defendant substituted National Default

6   Servicing Corporation ("NDSC") as trustee in place of Fidelity

7   National Title Company, the original trustee on the mortgage. (Id.

8   ¶ 29 and Ex. J.) On the same day, NDSC recorded a Notice of

9   Trustee's Sale, alleging an "unpaid balance and other charges" of

10  $422,003.57 and setting a sale date of September 27, 2011. (Id. ¶

11  30 and Ex. K.) On November 13, 2012, NDSC recorded a second Notice

12  of Trustee's Sale, alleging an "unpaid balance and other charges"

13  of $431,168.98 and setting a sale date of December 4, 2012. (Id. ¶

14  31 and Ex. L.)

15      Throughout the foreclosure process, Plaintiffs sought to get

16  the HAMP Modification problems corrected "according to the promises

17  made to them by U.S. Bank," including by engaging the assistance of

18  several attorneys and a loan modification specialist and sending

19  numerous letters to Defendant. (Id. ¶ 32.) Plaintiffs were also

20  forced into bankruptcy in an attempt to save their property through

21  a Chapter 13 reorganization on three separate occasions. (Id.)

22      On January 24, 2013, Plaintiffs received a letter from

23  Defendant summarizing its activity on Plaintiffs' case. The letter

24  indicated that the final loan modification documents were mailed to

25  Plaintiffs on November 19, 2009 and their first modification

26  payment was due October 1, 2009. (Id. ¶ 33.) It stated and that

27  Plaintiffs' modification paperwork was received by Defendant on

28  March 26, 2010 and was processed December 8, 2010. (Id.)

On August 30, 2013, Plaintiff Marlo Desser received an offer letter of employment which included a guaranteed salary and benefits from a company in the financial sector. (Id. ¶ 37.) However, she was informed on or about September 10, 2013 that the offer letter had to be rescinded because of negative credit reporting by Defendant concerning her default. (Id.)

Plaintiffs filed the instant action in Los Angeles County Superior Court on November 8, 2013. (See Notice of Removal ¶ 1.) Defendant removed the action to this court on December 20, 2013. (See id. at ¶ 13.) Plaintiffs assert seven causes of action: (1) breach of written contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraudulent misrepresentation, (4) promissory estoppel, (5) negligent misrepresentation, (6) declaratory relief, and (7) preliminary and permanent injunction.

On May 19, 2014, Defendant filed the instant Motion to Dismiss. (Dkt. No. 24.) The foreclosure process has been stayed during the pendency of this action.

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.2000). Although a complaint need not include "detailed factual allegations," it must offer

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

In moving to dismiss Plaintiffs' FAC, Defendant makes the following arguments: (A) that all of Plaintiffs' claims fail for lack of damages or preemption under the Fair Credit Reporting Act, (B) that Plaintiffs fail to state a claim for breach of contract or breach of the implied covenant of good faith, (C) that Plaintiffs' negligent misrepresentation claim fails to state a claim, and (D) that Plaintiffs' declaratory and injunctive relief claims fail to state a claim.

**A.   Home Affordable Modification Program**

Before considering Defendant's arguments, it is helpful to review basic aspects of HAMP. The Emergency Economic Stabilization Act of 2008 ("EESA"), Pub.L. No. 110-343, 122 Stat. 3765, required the Secretary of the Treasury to implement a plan that would assist homeowners in avoiding foreclosure and encourage servicers of mortgages to minimize foreclosures. See 12 U.S.C. § 5219(a); Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 880 (9th Cir. 2013) (summarizing the history and elements of the EESA and HAMP). The Treasury Department in turn created HAMP, which provides incentives for banks to refinance mortgages to enable distressed homeowners to stay in their homes. Many home loan servicers signed Servicer Participation Agreements with the Treasury Department that required them to follow Treasury guidelines and procedures in return for compensation for each permanent mortgage modification achieved under HAMP. See Corvello, 728 F.3d at 880.

Under the Treasury Department guidelines in effect at the time of the facts at issue in this case, the process by which homeowners could seek loan modifications was as follows: Borrowers supplied to their servicer information about their finances and inability to pay their current mortgage. See Treasury Department Supplemental Directive 09-01 (Apr. 6, 2009). Based on this information, the servicer then determined whether the borrowers were eligible for a loan modification. Id. If so, the servicer prepared a Trial Period Plan ("TPP"), which required the borrowers to submit documentation to confirm the accuracy of their earlier representations and make trial payments of a modified amount to the servicer. Id. In the case of borrowers who made all of their payments and whose

1   representations remained accurate, the servicer was required to

2   offer a permanent home loan modification. Id.

3        With this brief background, the court considers Defendant's

4   asserted bases for dismissal of Plaintiffs' FAC.

5   **B.   Preemption Under the Fair Credit Reporting Act**

6        Defendant argues that all seven of Plaintiffs' causes of

7   action are preempted by the Fair Credit Reporting Act ("FCRA").

8   (See Motion at 4; Reply at 1.) Defendant contends that the only

9   cognizable damages alleged by Plaintiffs is Plaintiff Marlo

10  Desser's lost employment opportunity, which resulted from

11  Defendant's reporting to credit agencies that Plaintiffs had

12  defaulted on their loan. (See id.) Defendant argues that, because

13  the FCRA bars state law claims against providers of credit

14  information for providing inaccurate information to consumer credit

15  reporting agencies, all of Plaintiffs' claims are preempted. (Id.)

16       Plaintiffs argue that, as an initial matter, Defendant's

17  premise that Plaintiff has not alleged any cognizable damages

18  unrelated to credit reporting is incorrect. (Opp. at 4.) It

19  contends that "the true heart of Plaintiffs' grievances has nothing

20  to do with U.S. Bank's reporting and instead focuses on U.S. Bank's

21  breached promise to have the account deemed current upon finalizing

22  the loan modification in their system." (Id.) The court agrees with

23  Plaintiffs that, with respect to each cause of action, Plaintiffs

24  have alleged damages that are unrelated to Defendant's negative

25  credit reporting, including that Plaintiffs face the impending loss

26  of their home through foreclosure and that they have incurred

27  accrued interest and late charges. (See Opposition at 5; FAC ¶¶

28  (Damages) 36, 40 and ¶¶ (Causes of Action) 9, 10, 16, 29, 30, 31,

36, 38, 39, 53.) Defendant contends that Plaintiffs have not paid
any interest or fees on their loan and that such damages are
therefore fictitious. (Mot. at 4; Reply at 2.) However, the court
agrees with Plaintiffs that accrued interest and fees need not have
been paid at this time in order to constitute cognizable damages
because they are liabilities incurred by Plaintiffs. As damages are
alleged with respect to each cause of action that are unrelated to
credit reporting, none of the claims will be dismissed in their
entirety on the basis of FCRA preemption.[2]

However, FCRA preemption may serve to preempt portions of
Plaintiffs' claims. Section 1681t(b)(1)(F), one of two preemption
clauses in the FRCA and the one that is relevant here provides
that, with some exceptions:

> No requirement or prohibition may be imposed under the laws of
> any State ... with respect to any subject matter regulated
> under ... section 1681s-2 ... relating to the responsibilities
> of persons who furnish information to consumer reporting
> agencies.

15 U.S.C. § 1681t(b)(1)(F) (emphasis added). Section 1681s-2, in
turn, prohibits furnishers of credit information from reporting
information they know or have reasonable cause to believe is
inaccurate and requires them to correct and update information
determined to be inaccurate or incomplete. See 15 U.S.C. § 1681s-
2(a)-(b).

---

[2] Plaintiffs also contend that their being forced to hire
attorneys to vindicate their rights presents additional cognizable
damages. (Opp. at 5.) However, as Defendant points out, Plaintiffs
have not pointed in their FAC to any provision of the loan
modification agreement providing for attorney's fees. (Reply at 2.)
The court therefore does not recognize attorney's fees as a form of
cognizable damages in this case. However, this does not affect the
court's preemption analysis, since other damages unrelated to the
credit reporting have been alleged.

10

Although FCRA preemption is an area of law in flux, there is strong support for the view that the FCRA preempts "claims for relief [] based on state laws relating to activity covered by Section 1681 s-2, that is, conduct relating to a furnisher's responsibilities to provide accurate information and conduct reasonable investigations following a dispute." Subhani v. JPMorgan Chase Bank, Nat. Ass'n, 2012 WL 1980416 (N.D. Cal. June 1, 2012) (providing thorough review of cases). Courts have generally held that state statutory or common law claims alleging damages related to a furnisher's disclosure of inaccurate credit information are preempted. See, e.g., Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005) ("Because Plaintiffs' State Claims [including, inter alia, negligent misrepresentation and common law negligence] are based on alleged injury arising purely from the reporting of credit information by a furnisher of credit, they are completely preempted.") (citing cases); Davis v. Maryland Bank, 2002 WL 32713429, at 13-14 (N.D. Cal. June 19, 2002) (finding FCRA preempted claims for negligence, defamation, intentional interference with prospective economic advantage and intentional infliction of emotional distress to the extent that they arose from improper investigation and disclosure of inaccurate credit information.) Accordingly, the tort claims asserted by Plaintiffs here, fraudulent misrepresentation and negligent misrepresentation, are preempted to the extent that these claims assert damages resulting from Defendant's reporting to a credit agency of inaccurate information concerning the status of Plaintiffs' loan.

However, the causes of action asserted by Plaintiffs that sound in contract must be addressed separately. On this issue, the

court finds Judge Carter's analysis of FCRA preemption in <u>Rex v.</u>
<u>Chase Home Fin. LLC</u>, 905 F. Supp. 2d 1111, 1152 (C.D. Cal. 2012)
instructive. In <u>Rex</u>, the plaintiff-borrowers carried out "short
sales" of their homes--sales in which the sale price is
insufficient to pay off the mortgage--and eschewed other options
such as foreclosure in reliance on promises by the defendant bank
to release the plaintiffs from the obligation to pay the short sale
deficiency. <u>Id.</u> at 1119. When the bank did not release the
plaintiffs but instead sought to collect the short sale deficiency
and reported the plaintiffs' failure to pay the deficiency to
credit reporting agencies, the plaintiff brought suit alleging
various claims, including breach of contract. The court concluded
that the breach of contract claim was not preempted because the
FCRA's preemption clause "prohibits only legal duties 'imposed
under the laws of any State,' whereas requirements voluntarily
assumed by contract are not imposed under state law." <u>Rex</u>, 905 F.
Supp. 2d at 1152 (quoting <u>Leet v. Cellco P'ship</u>, 480 F.Supp.2d 422,
432 (D. Mass. 2007) (denying motion to dismiss because a "breach of
contract claim is not preempted by the FCRA") (internal quotation
marks omitted).[3] Under this reasoning, which this court finds

---

[3] In reaching this conclusion, the court also relied on
<u>Kavicky v. Wash. Mut. Bank, F.A.</u>, 2007 WL 1341345, at *2 (D.Conn.
May 5, 2007) ("[T]he FCRA does not preempt breach of contract
claims."); <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 515,
525–26 (1992) (holding that provision in 15 U.S.C. § 1334(b)
stating that "[n]o requirement or prohibition ... shall be imposed
under State law with respect to the advertising or promotion of" a
product did not preempt a claim for breach of express warranty
because such a claim is "imposed by the warrantor" and "common
understanding dictates that a contractual requirement, although
only enforceable under state law, is not 'imposed' by the State,
but rather is 'imposed' by the contracting party upon itself");
<u>Spencer v. Nat'l City Mortg.</u>, 831 F.Supp.2d 1353, 1356, 1364
(continued...)

1   persuasive, the claims asserted by Plaintiffs that sound in

2   contract--breach of contract, implied covenant of good faith, and

3   promissory estoppel--are not preempted under Section

4   1681t(b)(1)(F), even to the extent that they assert damages related

5   to the disclosure of credit information.

6        Defendant argues that _Rex_ stands for the proposition that

7   breach of contract claims are immune from FCRA preemption only

8   where there are additional allegations unrelated to credit

9   reporting to support the claim and that Plaintiffs have made no

10  such allegations in this case. (Reply at 3 (citing _Rex_, 905

11  F.Supp.2d at 1150).) This argument is unsuccessful because, as

12  discussed above, the court finds that Plaintiffs have made viable

13  allegations of damages unrelated to credit reporting.

14       In sum, the court finds that none of Plaintiffs' claims are

15  preempted completely. The claims that sound in tort--fraudulent

16  misrepresentation and negligent misrepresentation--are preempted to

17  the extent that they assert damages based on Defendant's credit

18  reporting.

19  **B.   Breach of Contract and Implied Covenant of Good Faith**

20       Defendant makes several arguments in support of its position

21  that Plaintiffs' breach of contract and breach of the implied

22  covenant claims must be dismissed.[4]

23

24       [3](...continued)
    (N.D.Ga. 2011) (holding that the FCRA did not preempt claim,

25  despite plaintiff's allegation "she suffered approximately $116,997
    in damages as a result of [defendant's] false negative reporting to

26  the [credit reporting agencies]"). _See_ _Rex_, 905 F. Supp. 2d at
    1152.

27       [4] None of the arguments presented by the parties in their

28  briefing papers specifically reference Plaintiffs' implied covenant
                                                  (continued...)

13

1    First, Defendant argues that the breach of contract claim is

2 based on conduct which "does not violate the express terms of the

3 contract (i.e. the Trial Period Plan)." (Mot. at 5.) In particular,

4 Defendant notes that Plaintiffs have not pointed to contract

5 language stating that Defendant agreed to modify Plaintiffs' loan

6 by a certain date or explain any reason for any perceived delay on

7 its part. (Id.)

8    Plaintiffs respond by asserting that the contract at issue is

9 not the TPP, but the Loan Modification Agreement sent to Plaintiffs

10 by Defendant on November 19, 2009, which specified a "Modification

11 Effective Date" for the loan of October 1, 2009. (Opp. at 5 (citing

12 FAC Ex. C); FAC at 12-13.) Plaintiffs contend that they accepted

13 the Agreement by sending in a notarized signed copy of the

14 Agreement on December 2, 2009 and, after being informed that

15 Defendant did not receive this communication, sending their signed

16 Agreement in again in March 2010. (FAC ¶¶ 17, 23.)

17    Plaintiffs are correct. In the circumstances, Plaintiffs'

18 acceptance of the Agreement was all that was required to create a

19 contract. Defendant makes no argument to the contrary. The court

20 notes that the Agreement contains the following text: "I understand

21 that the loan Documents will not be modified unless and until (1) I

22 receive from the Lender a copy of this Agreement signed by the

23 Lender, and (II) the Modification Effective Date . . . has

24 occurred." (FAC Ex. C, Loan Modification Agreement, at ¶ 2(B).) The

25 second condition is met because Modification Effective Date had

26 already passed when the Agreement was sent to Plaintiffs. While

27 _____

28    [4](...continued)
claim.

14

1  there is no representation by either party that Defendant ever
2  provided a signed version of the Agreement to Plaintiffs, the
3  language quoted above from ¶ 2(B)(II) of the Agreement is not an
4  obstacle to finding the creation of a binding agreement. As a
5  California appeals court recently noted in construing identical
6  language in a loan modification agreement, concluding that no
7  contract was formed because Defendant did not return a signed copy
8  of the Agreement would violate basic principles of contract
9  interpretation, including that the court must avoid an
10 interpretation which will make a contract extraordinary, harsh,
11 unjust, or inequitable. See Barroso v. Ocwen Loan Servicing, LLC,
12 208 Cal. App. 4th 1001, 1013 (2012). Such an interpretation would
13 allow the servicer to avoid any obligations simply by failing to
14 return a signed agreement. Id. See also Corvello, 728 F.3d at 883
15 (concluding that a similar provision in a TPP impermissibly "made
16 the existence of any obligation conditional solely on action of the
17 bank," allowing the bank to "avoid their obligations to borrowers
18 merely by choosing not to send a signed Modification Agreement")
19 (quoting Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir.
20 2012)). Therefore, the court concludes that a contract was formed
21 establishing a modified loan with terms effective as of October 1,
22 2009.

23      Plaintiffs contend that Defendant breached the Agreement by
24 attempting to collect mortgage payments in amounts different from
25 those specified in the Agreement until December 2010. Specifically,
26 they note that the Agreement altered the monthly amount to
27 $2,084.49 at an interest rate of 2%. (Opp. at 5.) Plaintiffs
28 contend that Defendant failed to comply with these commitments by

1  continuing to bill Plaintiffs at $2,853.35 per month and 6%

2  interest until December 2010. (Id.) Defendant responds that the

3  mortgage statements do not reflect any breach because such

4  statements "would not reflect a new or different payment until and

5  unless a permanent loan modification is granted." (Reply at 4.)

6  However, as just discussed, a permanent loan modification was

7  "granted" when Defendant sent Plaintiffs the Loan Modification

8  Agreement, which, as noted stated an effective date of October 1,

9  2009. Once Plaintiffs accepted the Agreement, Defendant was bound

10  to comply with its terms.

11      Second, Defendant argues that Plaintiffs ultimately did modify

12  the terms of Plaintiffs' loan in January 2011, and thus Plaintiffs'

13  claims cannot be based on any purported failure to send Plaintiffs

14  a final loan modification agreement or to honor the terms of the

15  Agreement. (Mot. at 5-6.) Although Plaintiffs do not specifically

16  address this argument, their position appears to be in part that

17  the mortgage statements reflecting a modified loan beginning in

18  January 2011 do not constitute performance of the Agreement because

19  these changes were made 15 months after the effective date of the

20  Agreement (and 10 months from the date Plaintiffs sent in a signed

21  copy of the Agreement for a second time) during which time their

22  loan continued to accrue interest at a rate higher than the rate

23  stated in the Agreement. The court agrees that this could

24  constitute failure to perform on the part of Defendant resulting in

25  damages to Plaintiffs.

26      Plaintiffs additionally contend that Defendant breached a

27  contractual obligation when it failed, in issuing mortgage

28  statements reflecting a loan modification beginning in January

2011, to bring their account current. Plaintiffs argue that they followed the instructions of Defendant's representatives in not making payments based on the understanding that the delay would not prejudice them as their account would be brought current when the modification was ultimately processed by Defendant. (Opp. at 6.) Defendant argues that Plaintiffs' factual assertions in this respect are false because "U.S. Bank Home Mortgage would not advise a mortgagor to default on their loan." (Opp. at 2 (quoting FAC Ex. H (Letter from Defendant to Plaintiff, Jan 24, 2013).) However, on a motion to dismiss, this court is required to accept a plaintiff's factual allegations as true; disputing the truth of Plaintiffs' allegations is not a basis for dismissing the claim. Fed. R. Civ. P. 12(b)(6).

However, Plaintiffs' alleged promise to bring their account current when their loan modification was ultimately processed is not a viable basis for a breach of contract claim for a different reason: Plaintiffs have not identified any valid contractual commitment to support such a claim. The Agreement itself includes only a commitment to make Plaintiffs' account current as of the Agreement's "Modification Effective Date," which was October 1, 2009. See Agreement ¶ 3(B). Plaintiffs appear to contend that Defendant's representatives' oral communications amount to a modification of the Agreement. However, such an oral modification would not be effective in the circumstances alleged because it would not satisfy California's statute of frauds, which requires that certain types of contracts be in writing to have legal effect. See Cal. Civ. Code § 1624. The statute of frauds is applicable here because a mortgage for real property is within its provisions, see

1  Cal. Civ. Code §§ 1624(a)(3) and 2922, and "an agreement to modify
2  a contract that is subject to the statute of frauds is also subject
3  to the statute of frauds." <u>Secrest v. Sec. Nat. Mortgage Loan Trust</u>
4  <u>2002-2</u>, 167 Cal. App. 4th 544, 553 (2008). Because there is no
5  writing reflecting an agreement to bring Plaintiffs' account
6  current as of the date that it completed processing of the loan
7  modification, no valid modification of the Agreement to this effect
8  occurred. This conclusion means that Plaintiffs' breach of contract
9  claim is limited to only damages Plaintiffs can prove without
10  reference to Defendant's alleged oral promises.

11      Defendant's third argument is that Plaintiffs' allegation that
12  Defendant refused to provide "re-worked" modification terms or a
13  second loan modification fails to state a claim because a lender
14  has no duty to modify a loan. (Mot. at 6 (citing <u>Stebley v. Litton</u>
15  <u>Loan Servicing, LLP</u>, 202 Cal. App. 4th 522, 526 (2011) (finding no
16  duty to modify loan under Cal. Civ. Code section 2923.5). In
17  response, Plaintiff contends that Defendant did modify the loan but
18  failed implement the terms of its own agreement. (Opp at 6.) For
19  the reasons stated above, the court agrees with Plaintiff that it
20  may assert breach of contract claim arising from commitments made
21  by Defendant in the original Agreement, but not based on
22  Defendant's alleged oral promises. The court states no opinion as
23  to the viability of Plaintiffs' promissory estoppel claim, which is
24  based on the same oral representations.

25      Fourth, Defendant contends that Plaintiffs have failed to
26  allege any damages from the purported breaches related to the
27  modification of their loan. The court does not agree. As discussed
28  above, Plaintiffs have alleged various potentially viable damages,

1   including accrued interest and late payment fees, as well as the

2   impending loss of their home through a noticed foreclosure sale.

3        Finally, Defendant contends that the breach of contract claim

4   should be dismissed because tort damages are not recoverable in

5   this context. (Mot. at 6.) Defendant provides no elaboration and

6   the subject of Defendant's argument is not clear to the court.

7   **C.   Negligent Misrepresentation**

8        Defendant argues that Plaintiffs failed to state a claim for

9   negligent misrepresentation. (Mot. at 6.)

10       Negligent misrepresentation is "a species of the tort of

11  deceit." <u>Bily v. Arthur Young & Co.</u>, 3 Cal. 4th 370, 407 (1992).

12  The elements of the tort are "(1) a misrepresentation of a past or

13  existing material fact, (2) without reasonable grounds for

14  believing it to be true, (3) with intent to induce the plaintiff's

15  reliance, (4) ignorance of the truth and justifiable reliance by

16  the plaintiff, and (5) damages." <u>See Fox v. Pollack</u>, 181 Cal.App.3d

17  954, 962 (1986). To prevail on their claim of negligent

18  misrepresentation, Plaintiffs must establish that Defendant owed

19  them a duty of care. <u>See Bily</u> 3 Cal. 4th at 408-414; <u>Nutmeg Sec.,</u>

20  <u>Ltd. v. McGladrey & Pullen</u>, 92 Cal. App. 4th 1435, 1444 (Ct. App.

21  2001).

22       Plaintiffs' negligent misrepresentation claim rests on their

23  allegations that they repeatedly called Defendant for updates and

24  expressed concern that by not making payments they would jeopardize

25  their pending HAMP modification and lose their home to foreclosure,

26  but they were repeatedly given false assurances by Defendant's

27  representatives that their loan modification was "pending final

28  reset"; "not to worry" because they would not be penalized for not

1  making payments because Defendant was going to "reset" their loan

2  modification; and that they were not in danger of losing their

3  home. (FAC at 16.)

4       Defendant argues that Plaintiffs have not stated a negligent

5  misrepresentation claim because Defendant does not owe Plaintiffs a

6  duty of care. Defendant relies on <u>Nymark v. Heart Fed. Sav. & Loan</u>

7  <u>Assn.</u>, 231 Cal. App. 3d 1089, 1096 (1991) for the proposition that

8  "as a general rule, a financial institution owes no duty of care to

9  a borrower when the institution's involvement in the loan

10  transaction does not exceed the scope of its conventional role as a

11  mere lender of money." <u>Id.</u> at 1096. Defendant cites various cases

12  declining to impose a duty of care in negligence claims brought by

13  homeowners against banks on the basis of this general rule. <u>See</u>

14  Mot. at 5 (citing, <u>inter alia</u>, <u>Rangel v. DHI Mortgage Co., Ltd.</u>,

15  2009 WL 2190210, at *3 (E.D. Cal. July 21, 2009) (declining to

16  impose a duty of care in negligence claim where the plaintiff

17  alleged that he was "placed into a loan that [was] inappropriate

18  for her personal financial circumstances"); <u>Watts v Decision One</u>

19  <u>Mortg.</u>, 2009 WL 2044595, at *2-3 (S.D. Cal. July 13, 2009)

20  (declining to find a duty of care in the context of negligent

21  infliction of emotional distress claim where the plaintiff failed

22  to allege any facts suggesting such a duty); <u>Wagner v. Benson</u>, 101

23  Cal. App. 3d 27, 35 (Ct. App. 1980) (declining to find duty of care

24  for negligence claim where the plaintiffs alleged that the

25  defendant-bank loaned money to them, as inexperienced investors,

26  for a risky venture.)

27       As Plaintiffs note, however, the <u>Nymark</u> rule is not absolute.

28  In California, determining whether a financial institution owes a

duty of care to a borrower-client involves a 6-factor test. The court must consider "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." Nymark, 231 Cal.App.3d at 1098 (citing Biakanja v. Irving, 49 Ca.2d 647 (1958)).

The balance of these factors suggests that a duty of care was owed by Defendant under the circumstances as alleged by Plaintiffs. First, the loan modification transaction was plainly intended to affect Plaintiff, as it would determine whether they are able to keep their home. Second, it was foreseeable that Plaintiffs' alleged reliance on Defendant's representations that their account would be brought current would cause harm to Plaintiffs by precipitating their default and the potential loss of their home. Third, harm to Plaintiffs arising from Defendant's alleged conduct is likely in that Defendant has already initiated a foreclosure sale (which is stayed pending this action) and Plaintiffs have alleged harm in the form of accrued interest and late payment charges and a lost employment opportunity. Fourth, such harm can be attributed directly to Defendant's alleged conduct.

The court does not have a sufficient basis to reach a conclusion as to the fifth factor, concerning whether moral blame is attached to Defendant's alleged conduct.

Finally, discouraging lenders from making representations that would lead borrowers to default is consistent with the federal

government's policy of facilitating loan modifications as established through HAMP and various recent state-level reforms aimed at the same goal. See, e.g., Cal. Civ. Code § 2923.6 (establishing a scheme that encourages lenders to offer loan modifications to borrowers).

On balance, the court concludes that Plaintiffs' allegations, accepted as true, are sufficient to create a duty of care on the part of Defendant for the purposes of Plaintiffs' negligent misrepresentation claim.

This conclusion is consistent with the holdings of several cases where courts have found that a lending institution owed a duty of care to borrowers arising from the lender's conduct in processing an application for a loan modification. See Robinson v. Bank of Am., 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012) (holding that bank owed the plaintiff-borrower a duty of care for purposes of negligence action where the "defendant-lender executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff—in person, in writing, and by phone—regarding the status of his loan"); Ansanelli v. JP Morgan Chase Bank, N.A., 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (finding a duty of care where the bank-defendant allegedly "went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan," but then reneged on a promise to modify the plaintiffs' loan and reported the loan as past due although plaintiffs made proper payments, damaging their credit rating); Watkinson v. MortgageIT, Inc., 2010 WL 2196083 (S.D. Cal. June 1,

1  2010) (finding that the defendant-bank owed a duty of care in

2  processing the plaintiff's loan application where the "Defendant

3  overstated Plaintiff's income and the value of the Property on the

4  loan application, knowing that both of those were false"); <u>Garcia</u>

5  <u>v. Ocwen Loan Servicing, LLC</u>, 2010 WL 1881098, at *1-3. (N.D. Cal.

6  May 10, 2010) (finding duty of care in processing loan application

7  for purposes of negligence claim where the defendant-bank lost the

8  plaintiff's loan application documents).

9  **D.   Declaratory and Injunctive Relief**

10       Defendant contends that Plaintiffs' demand for declaratory and

11  injunctive relief fails because there is no viable substantive

12  basis for such relief. As Defendant asserts, both forms of relief

13  are viable only where independent claims supporting such relief are

14  viable. <u>See, e.g.</u>,<u>Padayachi v. Indymac Bank</u>, 2010 WL 1460309 (N.D.

15  Cal. Apr. 9, 2010) (plaintiff "may not maintain a claim for

16  declaratory relief unless one of his other claims survives the

17  motion to dismiss"); <u>Santos v. Countrywide Home Loans</u>, 2009 WL

18  3756337 (E.D. Cal. Nov. 6, 2009) ("Declaratory and injunctive

19  relief are not independent claims, rather they are forms of

20  relief." <u>Shell Oil Co. v. Richter</u>, 52 Cal. App. 2d 164, 168, 125

21  P.2d 930 (1942) ("Injunctive relief is a remedy and not, in itself,

22  a cause of action, and a cause of action must exist before

23  injunctive relief may be granted."). Defendant argues that

24  Plaintiffs' demands for declaratory and injunctive relief must be

25  dismissed because their predicate causes of action must be

26  dismissed. (Mot. at 8.) This argument fails because, for the

27  reasons discussed above, the court will not dismiss the underlying

28  causes of action.

1    Defendant additionally argues that Plaintiffs' request for a

2    declaration that Defendant has an obligation to permanently modify

3    their loan must be dismissed because Plaintiffs concede that

4    Defendant has already modified their loan and Plaintiffs thus

5    "already have the very thing they seek." (Id.) This argument is

6    unsuccessful because Plaintiffs contend that the terms of the

7    modification they ultimately received were inconsistent with

8    Defendant's alleged promises.

9        Finally, Defendant argues that Plaintiffs' demand for an

10   injunction preventing Defendant from foreclosing on their home

11   should be dismissed because Defendant has already stayed

12   foreclosure during the pendency of this proceeding. (Id.) While

13   this argument speaks to the lack of any need for a preliminary

14   injunction (for which Plaintiff has not filed any motion),

15   Defendant's point does not address the viability of Plaintiffs'

16   request for injunctive relief following a final resolution on the

17   merits.

18       Plaintiffs' FAC is deficient in that its requests for

19   declaratory and injunctive relief are set out in separate causes of

20   action rather than in the prayer for relief. However, in the

21   interest of expediting this litigation, the court will construe

22   Plaintiffs' demand for such relief as part of the prayer for relief

23   rather than require Plaintiffs to file a second amended complaint

24   solely for this purpose.

25

26   **IV.  Conclusion**

27       For the reasons stated herein, Defendant's Motion to Dismiss

28   Plaintiffs' First Amended Complaint is GRANTED IN PART AND DENIED

IN PART as follows: Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims are preempted by the FCRA to the extent that they assert damages resulting from Defendant's reporting to credit reporting agencies. Defendant's motion to dismiss is denied all other respects.

IT IS SO ORDERED.

Dated: August 27, 2014

DEAN D. PREGERSON

United States District Judge